Second case of the day, 20-13158, Shenetta Collins v. Koch Foods. And take your time getting settled, but I see that we have Mr. Gurrier here for the appellee. And Mr. Gurrier, whenever you're ready, no hurry. And please, the Court, I am Charles Gurrier, representing Shenetta Collins. I'm here along with my co-counsel, Heather Leonard. The District Court's order that reduced the back pay award to Ms. Collins in this case was not consistent with the first principles that govern remedies in Title VII cases. As this Court recognized in Darnell v. City of Jasper, the basic purpose of Title VII, the remedial provisions, is to make whole victims of unlawful discrimination. This was established in 1975 by the Supreme Court in Albemarle paper. To this end, it is the duty of the District Court, after a finding of discrimination, to place the injured party in the position she would have been in absent the unlawful discriminatory conduct. And that is clearly the standard in this circuit. Nord establishes Archambault, establishes that. Munoz establishes that. So in this case, the jury found that Cook Foods unlawfully denied Ms. Collins' promotion to a new position, the position of complex HR manager. And I understand you've read the briefs, but just for a recap, you have multiple facilities in the Montgomery area that are Cook Foods, various plants. You have an HR manager at each plant, and Ms. Collins was an HR manager at one of these plants. But then you have an HR manager over all of the plants. That's the complex HR manager. She was seeking to be the complex HR manager. She was the HR plant manager at one plant. Can I ask you just a quick question to kind of cut to the chase on the remediator issue? I think I take the parties basically to agree that the question here basically boils down to whether she would have been subsequently fired, terminated, even if she had been promoted. Do we agree about that? We believe that's exactly the question. The only question is that had she been promoted, would she then have been terminated as a result of some intervening cause? And it is a counterfactual process that we must go through. And the jury didn't answer that question. They were not asked that question. They were not answered that question. Moreover, they were charged she got a back pay through the date of the verdict. Absolutely. Kind of assuming that if she was not promoted, then her back pay award should be through the date of promotion. It didn't matter about this other termination situation. Right. Because as we point out in the brief, the only argument, Ray, there are two arguments raised by the defendant as to why she wasn't promoted. One, she wasn't ready. So it had nothing to do with her qualifications, just not ready. And the second was promoting her would violate the anti-fraternization policy. The jury found, no, you denied her the promotion because a factor was her sex. That was the first question, the answer. And then they said, no, you would not have reached the same decision even if you had not considered her sex, which means they had to have rejected both of the reasons given. That means the jury found factually that the anti-fraternization policy would not have barred her holding that job. And as I understand the case, and I say these questions so your opposing counsel can answer them, I looked at the record and I didn't see that they argued in closing, by the way, if you find this, then you need to cut off the damages on the termination. If you find it, I mean, none of that was argued. Right. None of this theory that they went to the judge on the remittance or after they get the verdict was not argued in closing to the jury. That's right. In fact, it wasn't argued because it wasn't instructed to the jury. Well, but that doesn't mean the instruction of the jury was damages to verdict. Right. And that's the instruction they requested. I understand that. And your instruction was didn't go that far. Our instruction would have, we would have proposed a number of additional questions. In the charge conference, there was some discussion about the problem. Right. That going to verdict would create. Right. And we raise this as a problem. Now, we didn't propose a strong jury instruction on this because it's an affirmative defense. It's not our defense. So it's not our job to do that. It looks like on the surface, like an inconsistent verdict. It looks like it looks that way. Well, there was a remedy for that. The remedy for that was to move the court before the jury retired. Absolutely. Say there's a problem here, Your Honor. And we think the jury should be re-instructed. Absolutely. And so the court could have eliminated the whole problem. And probably with the crafted instruction to the jury. Right. And maybe even allow the lawyers to argue on that instruction. All within the court's discretion. Yeah. I'm not arguing with you. I'm throwing you a softball. The court could have said, you know, I'm going to take this jury verdict as advisory. Whatever it could have said. There could have been lots of things that could have been resolved. Except he had a notice problem with that because he didn't tell the parties he was going to treat the verdict as advisory. But the point is, the motion was not made and the jury was discharged. Absolutely. And so what we end up with then is this question that the district court resolved in favor of the defendant by overruling the factual finding made by the jury that she could have held this job despite the privatization policy. And that's why. Yeah, she would have been in leadership and they picked the plant manager because he was over both plants. But she then would have been a manager and they may have done something better for her. They may not have just fired her instead of firing him. During the closing argument, counsel for Cook Foods said, under our policy, the more senior person would have been transferred. If there's a conflict. So termination. The fact of the matter is nobody tried what would have happened. Nobody even claimed if she'd been promoted, she would have been terminated anyway. They just didn't think of this gap. Well, plenty certainly did. We were concerned about it at the jury charge discussion conferences. I'm concerned about it all along. But what it ultimately means, though, is all that aside, the rightful place doctrine is primary to full relief under Title VII. And whether there was some confusion about it, the jury clearly understood it. Because aside from the fact that the verdict or the verdict form says calculate back pay up to the date of your verdict, they calculated independently a dollar amount which was different than the dollar amount that the plaintiff had proposed. Can you remind me just a quick record question? So the instructions definitely say to the date of verdict. The verdict form also says the date of verdict? Yes. Yeah. And so they came up with this $262,000 verdict. Now, you may not remember, but during the trial, there was testimony that her back pay from being terminated, because there was both the termination and the promotion claim, her back pay between the job she had and that her mitigation was $73,000. And then there was some discussion about what her pay would have been had she been promoted. Well, if you look at those figures, her back pay may look like it's somewhere around $300,000 or more. I spent a lot of time trying to figure out how a jury got to $262,000, because it's an odd number. And my math skills, I guess, came back and helped me, because there's testimony that 31% of her salary was benefits, and she's entitled to her benefits. Well, the number wasn't stipulated at any rate. The jury had the task of coming up with a number. Right. And what they did, I believe, is $62,000 is 31% of $200,000. And the $200,000 would represent the $70,000 she lost between the job she had and her mitigation. And then the remaining $130,000 represents the amount of money she would have gotten had she been promoted over and above her other salary. So they did their own calculation to get that amount. And they clearly had to look past the termination and say, no, she would have continued to work that way, work that period of time. So we believe that the court was wrong, erred, whether it's a violation of the Seventh Amendment, or whether it's an abuse of discretion under the remitter, or the failure to apply the proper legal standard, that we believe that the jury's verdict should be reinstated. The court's remitter should be reversed and reinstated. Now, just with regard to the remaining two items, the 1981 race termination claim, very shortly we believe that under this court's recent precedent in Blash v. City of Hawkinsville, in fact, Jenkins v. Nell that we sent in a supplemental opinion based on Judge Joflat's opinion in Smith v. Lockheed Martin, that we believe there is a convincing mosaic of evidence here that allows us to use some comparators for a race case. And we also believe that... Can I ask you just a quick question? Sure. So convincing mosaic has been around for a while. That's been a fear, an alternative to McDonnell Douglas for a while. Did you present that theory to either the district court or in your opening brief to us? Yes, we did. We did present it to the district court. We presented all theories to the district court. How about in your blue brief to us? I don't think we did. I believe we mentioned convincing mosaic. My recollection was to the contrary. If it turns out that we look at the blue brief and convincing mosaic isn't there, does that mean... No, I don't think it is because convincing mosaic, McDonnell Douglas direct evidence, that's not the legal standard. The legal standard is but-for-causation. And so there's lots of ways to get there. And I'm one of these who believes strongly in sort of the Seventh Amendment or the Seventh Circuit's decision that we need to quit putting things in boxes like this. There's evidence is evidence. And does the evidence meet the legal standard? Yeah. And so for but-for-causation, what we've learned from Bostock is that it doesn't have to be the sole reason. It can just be a motivating factor. And then the question is, what do you do to rebut that? If it's typical but-for, then plaintiff has to basically show pretext and rebut the legitimate non-discriminatory reason. If it's a motivating factor, the burden shifts. But it's still a motivating factor to establish that initial step. And we believe the evidence is sufficient to meet that standard on the race termination claim that should be remitted, as well as the outrage claim. And I see my time is up. Okay. Very well. Thank you so much. You've got the full three minutes of rebuttal remaining. Ms. Honert, let's hear from you. May it please the Court. I'm Janelle Honert. I'm here on behalf of Cook Foods. With regards to what the jury was asked to decide and what they were not asked to decide, in Walker v. 4 Motor Company, which is a case cited by my friends to the left, in that case, they reviewed what type of burden there is for each side to bring things before the jury with regard to damages. And in that case, this Court held that the plaintiff must establish first the underlying facts that will support damages. With regard to this newly asserted argument that plaintiff would not have been terminated had she been promoted, it was plaintiff's burden to present that to establish the now asserted back pay damages argument. And plaintiff did not argue that in front of the jury. It's only once that burden is reached that the burden shifts to defendant under a Munoz analysis to establish that there was an intervening factor such as the termination. So, what do you, though, make of the fact that both the jury instructions and the verdict form said to date of the verdict? The reason they said that, Your Honor, is because that's what the pattern jury instructions from this circuit instructs parties and the Court to use. Typically, that, in many trials, every day in the state, that works just fine. In this case, when opposing counsel brought up their concern about the pattern, it was not for this case that we have this outcome. They said they were concerned the jury may find for them on the termination claim, but not on the promotion claim, and that that could be an inconsistent verdict. Knowing the facts of the case, I understood that to be because of the timing of those two things. Here, we do not have an inconsistent verdict. Both these two things can and will stand with regards to a decision on a promotion and a decision on a termination. Those are consistent. How do you explain the $262,000 award? I think that the jury calculated it. The jury first found, yes, that gender was a motivating factor. Then the jury found that Cook Foods did not meet its burden of showing that it would have made the same decision without gender being a factor. That doesn't mean they completely disbelieved the reasons for not promoting her.  So to take that one step further, they also found her termination was proper, that gender was not a factor. Many of the same reasons for not promoting her were part of why they terminated her, and the jury found that was not for a discriminatory reason. When they got to the back pay award, they did not award punitives. They did not award compensatory. They got to the back pay, and unfortunately, that error, it's not a prejudicial error, but that error on the verdict form for this particular math calculation instructed them to calculate the damages through. So the $262,000 does include not only the back pay, but the increase in her promotion pay, which she would have got promoted to the date of verdict. No, Your Honor. Tell us what you think is in, going back to Judge Newsom's questions. Yes, Your Honor. What is in the $262,000? Yes, Your Honor. I believe they calculated what she would have earned in the plant manager, HR position had, I'm sorry, I misspoke. Judge Hull, you're exactly right. I'm confusing my two classes. She promoted, and her promotion, they calculated the promotion back pay through the date of the trial. They gave her her promotion back pay money? Yes, Your Honor. And through, I guess it's, yeah, it would be back pay, forward pay. I guess it's all of the above, but at the promotion level. Yes, there was not a front pay claim in this case. Yes, Your Honor. Okay, so they gave her a full promotion amount. Why wouldn't you arguably read that that is a determination that she wouldn't have been promoted? I mean, she wouldn't have been terminated if she'd been promoted. They gave it the full thing. Inferentially, isn't that at least as reasonably that as your other theory? Because the judge wasn't, the jury wasn't asked to consider that. It wasn't argued by the plaintiff in any of their arguments. It was on the evidence council. That's the problem I have. It was on the evidence. There's two things. It was in the evidence. The reason for termination was argued, etc. But that was in the evidence. And the jury also had an instruction to calculate damages to date of verdict. So the jury sits back there and they're going to calculate the date of verdict. And they've heard all this testimony. And they could have found implicitly there wasn't a question put to them based on the evidence that they wouldn't have terminated her. I take your point, Judge Joe Flatt. But I think it is speculative to think that that's where the jury went as opposed to the jury agreeing. Well, then you have an inconsistent verdict. A verdict that doesn't make any sense. And you had an obligation to bring that to the court's attention before the jury's charge. And you didn't. Well, Your Honor, it's not an inconsistent verdict, I argue. It is an error on the verdict form. And we see in cases such as Holmes and Goldstein where they had an error on the verdict form. Yeah, but it was. I'm sorry, Your Honor. But the error was waived on the verdict form. It was your verdict form. It was the 11th Circuit pattern. I understand. But I understand. But they proposed a different verdict form. Well, they did not object to the jury instructions. The fact that it was 11th Circuit pattern instruction didn't make it error free. If you thought the pattern instruction was wrong, you should have objected. Your Honor, they brought forth a different verdict form. And then when it was discussed with the district court, they did not continue to raise an objection to that form. So they. Oh, I understand. Your form went to the verdict. The pattern instruction form. Yes, Your Honor. OK. So the jury had it. And they had all the evidence. And they also had the jury's instructions from the court. I know. Which, as this court is well aware, combines with the verdict. It's not one or the other. And those instructions were not objected to by counsel for plaintiff. And they included that same instruction. That if you for back pay, you must calculate through the date of the verdict. Yeah. Let's take a hypothetical. Let's assume you're trying a case like this. It is one way to try the case is that they could have tried the case. Or you could have tried the case. It doesn't matter who. But you could have tried a case where you say, she was properly terminated over here after the failure to promote. But the jury could have found if she'd been promoted, she never would have been terminated. I mean, that could have happened if they'd had. That wouldn't have been an inconsistent verdict. I know that's not what happened here. It's not unusual to have a failure to promote in a termination case. Yes, ma'am. And a lot of times, you do have this other question in there. And it's answered. Okay, would she have been terminated anyway after the promotion? I mean, it could have been asked and straightened out. That's my hypothetical question. It could have been. The question goes, whose burden it is. But that can be a proper verdict. Yes, Your Honor. Okay. So, and the evidence certainly supported that possibility here. Right? The possibility that she could have been promoted and not terminated? Yes, there was enough evidence to support a verdict. I know we don't have that verdict. We don't have that fact finding here. But that is not, per se, that's not an inconsistent verdict. There was, the testimony I recall is that the conflict would have still been there had she been promoted. She would not have been promoted out of the conflict. And I don't recall... But nobody said, and she would have been terminated anyway, even if she'd been promoted. I don't believe that's there. But we argued to the jury she was terminated because in HR, when the new fraternization policy says anyone in HR cannot be in a relationship with someone in the complex, and that was argued over and over and over as the reason for her termination. That didn't change when she was still in HR, but in a higher position. And that's the... Well, you don't know what her behavior... I'm not going to argue about the facts and what did or didn't. But intellectually, you could have this type of case where you could hypothetically have a consistent verdict. She would not have been terminated if she'd been promoted. You can have that type of case. Right. Yes. Yes. Okay. As to the... And the evidence, I mean, take it as an assumption, the evidence supported that type of verdict. The problem here is we don't have a finding on that issue. We just have the jury clearly gave her the money as if she would have been promoted, she wouldn't have been terminated through the date of verdict. They clearly gave her that money. And we argue they clearly followed the instruction to... Right. ...calculate back pay through the date of verdict. Right. And that you cannot infer... I don't know. Jurors compromise all the time. What's troubling about this case, they could have easily compromised, all right, we're going to give her all the money on this and say no on the termination. I mean, they do that all the time. Your Honor, I'm aware that that happens, but that's certainly not an argument that's been raised in this case. And it's certainly not a proper reason to affirm a judgment is from a negotiated verdict. I agree too, but here the court told them, award it through the date of verdict. And they did just exactly what the court said. Yes, Your Honor. And to me, that is not unlike the verdict forms that were used, I believe it was in Holmes or it might have been Goldstein, where the jury was asked in that case about gender and they found for the plaintiff and they were asked about a retaliatory termination. And they said, yes, that retaliation was a motivating factor. And then when you got to the second question about the same decision defense, and it was erroneously said, did they make the same decision without regard to gender? And they said, yes. And the court said, that's an error that we can fix because it's not an error that sends this case back to the jury. Was there any closing argument? Ignore the court's instructions. And if you find she was terminated, stop the promotion claim award on the date of the termination. Did anybody argue that to the jury? No, Your Honor. Okay. With regard to the waiver question, this is not a motion for a new trial under 49B. This is a motion to amend a verdict under Rule 59. And it was timely made. We did not ask the court to invade the province of the jury and to change any of the analysis or calculation that is for a jury under the Seventh Amendment. This is a back pay award that unlike many cases can be easily calculated. Defendant did not argue that the back pay should be limited to her lower paying job. It wasn't increased to her higher paying job. In our request for the remitter, we argued to allow the plaintiff to receive as high of a back pay award as she could based on the findings that we actually had from the jury. And to ask for a district court to recalculate back pay does not trigger a Seventh Amendment right under the jury trial as we see from the court's precedent. If I could move to the race claim, there was some confusion at the district court level about what mixed motive versus convincing mosaic. Convincing mosaic is obviously an alternative way to argue a prima facie case, but at odds all it gets you is a prima facie case. A plaintiff in their brief or her brief pulled in all of the gender arguments, argued Quig, which is a motivating factor case, which is a mixed motive case. Quig would not apply to a 1981 claim, which must have, as our plaintiff concedes, but for causation. So the lower court properly found no prima facie case for Price Waterhouse. But as this court knows, they may affirm the district court's decision on any adequate ground, even if, you know, one other than what the district court actually relied upon. The comparator evidence in this case does not establish convincing mosaic. We set that out explicitly in our summary judgment brief and explicitly before this court. They're certainly not Lewis comparators, and even under the standard in the case, supplemental case provided by plaintiff's counsel, they're not comparators to establish a convincing mosaic of race. In addition, we've got a case where plaintiff was replaced by an African-American. Her most proper comparator was her husband, who is African-American. The promotion she sought was given to an African-American. There's no comments, no stray remarks. She claims it's because, you know, her termination and then and promotions. And that's not, there's not enough evidence with the comparator evidence even presented. I'm happy to go to the outrage argument if the court wants. I think we've got it, and the plaintiff's counsel really didn't touch it meaningfully in his opening. So I think we've got your case. Thank you so much. All right, Mr. Guerrero, three minutes of rebuttal time. Thank you, Your Honor. First, I have checked our blue brief. We cite Smith versus Lockheed Martin on page 44 of the blue brief, but we cited for the broader principle from Smith that the plaintiff will always survive summary judgment if they create circumstantial evidence that establishes a tribal issue of discrimination, which is really the broader holding in Smith that incorporates the convincing mosaic. So we did not use convincing mosaic language, but we did cite Smith there. Let's go to what the jury found and what they didn't find. The jury didn't just find that sex was a motivating factor. They certainly answered yes to that question, but they, by rejecting the same decision defense, by saying, no, you would not have reached this same decision, that means they specifically rejected the assumption that there was another but-for cause. No other but-for cause. And so maybe they knew, obviously, this policy was in effect. They maybe heard all this testimony, but these were meaningless things. Well, the policy was before the jury in terms of the evidence. Right, and they rejected that. So it's not like, well, all they found was sex was a motivating factor. By rejecting all the other factors that were presented, essentially found sex was the only factor, the only but-for cause. So that's what they found. Second, the jury did not find and was not asked to find that the termination was proper. The only question they were asked, was she terminated because of her sex? And they said, no. They were not asked, and it wouldn't be proper to ask, was the termination, quote, proper? Because that would ask the jury to sit as a super personnel board and there'd be no guidance for how do you decide whether the termination was proper or improper. They answered the question, which was, no, her termination wasn't based upon race. We don't know what her sex, we don't know what it was based upon. But they didn't hold or find termination was proper. But again, they also didn't find that she would have been terminated had she been promoted. They were not asked that. Third, the district court actually addresses this question when it denied the renewed motion for judgment as a matter of law, where the court discusses the very policy, and says, no, the evidence is clear that the policy would not have prohibited her from being promoted. Therefore, I'm sustaining the jury's verdict on this because there's evidence. So the court itself spoke to the fact that the policy would not have stopped her from being promoted. Fourth, there's some discussion about whether this is speculative. And of course, it's speculative. That's the nature of remedies in Title VII cases where you have to be counterintuitive. So if there's any confusion, the law is clear. You have to resolve those against the defendant. And let me just say in closing, the district court at one point in her order on judgment as a matter of law said this appeared to be a weak case. Well, weak, strong, she prevailed.  And while the court may have characterized the claim as weak, her remedies are strong. And they must be strong. That if they're not strong, there'll be nothing to make certain the law is complied with. The jury understood that. The jury awarded her full relief, make whole relief. And in fact, she'd be entitled to instatement to that job if she wasn't satisfied with the job she had. District court erred in reducing the jury's verdict. It should be reinstated and sent back to the district court. Thank you. Thank you so much, both sides. All right, so that case is submitted.